IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TONY MAURICE WATTS, # 318452 *
Plaintiff,
v. * CIVIL ACTION NO. DKC-13-3716

KATHLEEN GREEN *
LT. DONOWAY
CO II MS. WRIGHT *
CO II TYLER
Defendants. *
*****

**MEMORANDUM OPINION**

Pending are the self-represented original, Supplemental, and Amended Complaints filed by inmate Tony Maurice Watts ("Watts") pursuant to 42 U.S.C. § 1983. ECF Nos. 1, 3, 6, 10, 12 & 15. Defendants, by their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment with Declarations. ECF Nos. 17 & 23. Watts has filed an Opposition response. ECF No. 22. Oral hearing is not needed to resolve the issues. *See* Local Rule 106.5 (D. Md. 2014). For the reasons that follow, Defendants' Motion for Summary Judgment IS GRANTED and judgment will be entered in their favor.

**BACKGROUND**

In his court-ordered Supplemental Complaint Watts, an inmate at the Eastern Correctional Institution ("ECI") in Cumberland, Maryland, claims that his cell was without a working light for approximately sixty (60) days from October 2013 to December 2013.[1] ECF No. 3 at pg. 3. Watts complains that this has had a "serious effect" on his eyes, causing him

[1] In his original Complaint, Watts claims that although he informed prison staff of the lack of lighting in his cell, he received no remedial action. ECF No. 1. He claims that the inaction occurred in retaliation for his filing a federal complaint in 2010. *Id*.

blurred vision and headaches. He accuses Defendants of "cruel and unusual punishment" and "deliberate indifference" and seeks compensatory damages. Watts later states that he filed a grievance regarding his cell lighting on December 3, 2013, but Lt. Donoway refused to process the remedy. ECF No. 6.

**Plaintiff's Allegations**

This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Such review liberally construes Watts' pleadings in light of the fact that he is self-represented. *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978).

**Lighting Conditions of Cell**

Watts alleges that he had no cell lighting for approximately sixty days and informed the Warden, tier officer, and housing unit lieutenant of same without results. Defendants state that on November 14, 2013, Watts was seen by a Registered Nurse for his complains of blurred vision. ECF No. 17, Ex. 1 at Switalski Decl. An eye examination was conducted. Watts' vision was found to be 20/30, which did not qualify him to be seen by an optometrist. Watts was nonetheless referred to a provider and when seen in the Chronic Care Clinic on November 21, 2013, he raised no complaints about his vision problem. *Id*. On November 14, 2013, a Maintenance Work Order was issued to repair the lighting in Watts's assignment cell. *Id*., Ex. 1 at Switalski Decl.; Ex. 2 at Donoway Memo.

Defendants further state that on December 3, 2013, Watts gave Lt. Donoway an Administrative Remedy Procedure ("ARP") grievance regarding the non-working light in his

cell. *Id*., Ex. 2 at Donoway Memo. Donoway gave the ARP back to Watts after determining that there was a pre-existing work order to fix the lights. On December 5, 2013, Lt. Donoway gave Watts the opportunity to move to another cell until his light was fixed. Defendants claim that Watts declined the move and decided not to file the ARP because he was "satisfied with the resolution that was set in place." ECF No. 17, Ex. 2 at Donoway Memo. On December 6, 2013, Watts was again seen by a nurse and complained of eye problems. He additionally informed the nurse that his cell light had been broken since October 12, 2013. The nurse notified custody staff that there were no lights in Watts's cell. *Id*., Ex. 1 at Switalski Decl. On December 16, 2013, a maintenance report shows that the work order for Watts' lighting had been completed. *Id*.

In December of 2013, Watts filed two separate ARPs against the medical department for not dealing with his headaches and vision problems. *Id*. Executive Director of the Inmate Grievance Office ("IGO") Scott Oakley maintains that Watts did not file an appeal or grievance with the IGO regarding his cell lighting. *Id*., Ex. 3 at Oakley Decl.

On December 26, 2013 and January 14, 2014, Watts advised the prison nurse that he had been suffering from a headache and that his reading glasses had broken during a custody search. *Id*., Ex. 1. On March 7, 2014, Watts was provided with new eyeglasses. *Id*.

In his Opposition Watts contends that on November 12, 2013, he informed Officer Wright that he had been without cell lights for three weeks. He asserts that Defendants knew he did not have working lights before that date. ECF No. 22 at pg. 2. Watts further maintains that Defendants' Motion contains several untrue facts. He claims that Donoway's memo contains

false information in that he gave his ARP to another officer, not Donoway, and maintains that Donoway never gave him the opportunity to move to another cell. *Id*. at pg. 3. He claims that he wrote an ARP, but Defendant Donoway's interference prohibited it from reaching the Warden's desk. ECF No. 22 at pg. 7.

**STANDARD OF REVIEW**

**I. Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). This Court, however, "need not accept the legal conclusions drawn from the facts, and [the Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged

with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id*. at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**2. Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must

view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the court can ignore a clear failure in the pleadings to allege facts which set forth a claim, *see Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990), or assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**ANALYSIS**

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants assert that Watts' claim filed against them is dismissible under Rule 12(b)(6) and Rule 56 on grounds of no personal participation, respondeat superior, non-exhaustion, the failure to demonstrate a violation of the Eighth Amendment, and qualified immunity.

**I. Respondeat Superior**

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under 42 U.S.C. § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Watts' claim with regard to Defendant Green is based on her

supervisory position as Warden at ECI, as she does not appear to have been personally involved in the matter at issue. There is no evidence to suggest that Green had actual or constructive knowledge of the matter at issue here.

**II. Failure to Exhaust**

Defendants argue that Watts' claim is barred due to his failure to exhaust administrative remedies. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Watts' claim falls under the exhaustion prerequisites of § 1997e(a), and must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or

that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If an appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10–206, 10–210; Md. Regs. Code Title 12 § 07.01.03.

Watts' failure to exhaust administrative remedies is undisputed. He clearly did not fully grieve claims regarding his cell lighting to the IGO. The record shows that the ARP grievance process was available to Watts and he utilized the process as to other issues prior to pursuing this § 1983 action against Defendants.

**III. Conditions of Confinement**

Watts, however, claims that his attempt to file a grievance regarding his cell lighting was impeded by Unit Lt. Donoway on December 5, 2013, when Donoway returned the grievance to him. Indeed, Donoway's Internal Memo appears to indicate that "prior to submitting the ARP" he would contact the Maintenance Department to "see what time frame they had in place to fix the light" given the pre-existing work order. Were this court to view Donoway's action as a formal impediment or attempt to discourage Watts efforts to file a grievance, *see Graham v. Gentry*, 413 Fed Appx. 660, 663 (4th Cir. 2011), the undersigned nonetheless would find no constitutional violation.

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that prison officials subjectively acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (exposure to environmental tobacco smoke). The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

According to the uncontroverted record, the lighting in Watts' cell was broken late in October of 2013, and was fixed on December 16, 2013. Even when the facts are read in a light most favorable to Watts, assuming that Watts informed staff of the lighting issue in October and November, the sequence of events portrayed by Defendants shows that once officially informed of the problem, a work order was issued and action was taken to rectify the problem, albeit in a non-expeditious manner. In any event, there is no showing that Watts suffered any long-term

medical consequences from the lack of lighting in his cell. No Eighth Amendment violation has been demonstrated.[2]

## CONCLUSION

Having found no genuine dispute of material fact justifying a trial on the merits in this case, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, shall be granted.[3] A separate Order shall be entered forthwith.

Date: February 5, 2015

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[2] Watts's original Complaint claim of retaliation was raised in a conclusory manner and is not colorable under § 1983. *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86 (4th Cir. 1993). The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision...." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *see also Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

[3] In light of the absence of an Eighth Amendment deprivation, the court sees no need to address Defendants' personal liability and qualified immunity arguments.